UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **ROBERT C. BROADWAY**<br>    **LA. DOC #99478**<br>**VS.** | **CIVIL ACTION NO. 5:15-cv-0086**<br><br>**SECTION P**<br><br>**JUDGE S. MAURICE HICKS** |
| **OFFICE OF THE DISTRICT**<br>**ATTORNEY** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Robert C. Broadway, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 13, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, where he is serving a life sentence imposed following his 1982 aggravated rape conviction in the Thirty-Ninth Judicial District Court, Red River Parish. Plaintiff sued the District Attorney's Office and Red River Parish D.A. William R. Jones; he prayed for an order or judgment for DNA testing of biological evidence. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

In his original complaint plaintiff alleged only that "The District Attorney's refusal to release biological evidence for DNA testing has deprived plaintiff his 14th Amendment Right to Due Process." He claimed that the D.A.'s refusal to release the biological evidence occurred in

2005 and that on July 6, 2005 the District Court ordered preservation of "evidence sought for DNA testing." [Doc.1, ¶IV; Doc. 8, ¶IV]

On April 13, 2015, the undersigned ordered plaintiff to "provide copies of all pleadings and exhibits filed by him or on his behalf pursuant to LSA C.Cr.P. art. 926.1 in either the 39th Judicial District Court, the Second Circuit Court of Appeal and/or the Louisiana Supreme Court, along with all orders or judgments of those courts." [Doc. 12]

On April 22, 2015, plaintiff responded to the directive and provided some, but not all of the documents.[1] Plaintiff did not provide a copy of the original pleadings filed in the Thirty-Ninth Judicial District Court. It is therefore impossible to determine whether his original pleadings complied with the provisions of art. 926.1(B). He did provide a copy of the brief he filed in the Second Circuit Court of Appeals along with the Second Circuit's judgment denying writs; however, he did not provide any pleadings filed in the Louisiana Supreme Court.[2]

---

[1] Plaintiff provided the following: (1) A copy of a letter dated July 14, 2003, from the District Attorney to plaintiff denying his request for public records. [Doc. 13-1, p. 2] (2) A copy of plaintiff's March 4, 2005, brief filed in the Second Circuit Court of Appeal seeking review of the trial court's order denying relief. [*Id.*, pp. 3- 18, p. 21] (3) The Second Circuit's April 13, 2005, order denying writs in Case Number 40061-KH. [*Id.*, pp. 19-20] (4) A copy of the July 6, 2005, order of the District Court directing the preservation of DNA evidence "should there be any." [*Id.*, p. 22] (5) A copy of the February 18, 2005, order of the District Court denying post-conviction relief. [*Id.*, p. 23] (6) A copy of the Crime Lab's receipt of evidence submitted on February 19, 1982. [*Id.*, pp. 24-26] and, (7) A copy of the March 14, 2005, letter from plaintiff's trial counsel. [*Id.*, p. 27]

[2] The published jurisprudence of the State of Louisiana indicates that plaintiff did in fact seek further review in the Louisiana Supreme Court. Writs were denied without comment on March 10, 2006. *State of Louisiana ex rel. Robert C. Broadway v. State of Louisiana*, 2005-1532 (La. 3/10/2006), 925 So.2d 500.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Due Process*

The United States Supreme Court has recognized that "a postconviction claim for DNA testing is properly pursued in a § 1983 action," *Skinner v. Switzer*, 562 U.S. 521, 131 S.Ct. 1289, 1293, 179 L.Ed.2d 233 (2011). Where a state has created a right to post-conviction DNA testing, "the state provided procedures must be adequate to protect the substantive rights provided." *Elam v. Lykos*, 470 F. App'x 275, 276 (5th Cir.2012) (*per curiam*) (citing *Skinner*, 562 U.S. 521, 131

S.Ct. at 1293, 179 L.Ed.2d 233, and *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67–69, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009)). In order to prevail in this Section 1983 action, the plaintiff must establish that he has been unconstitutionally denied testing of DNA evidence because the process provided by the State was "fundamentally inadequate to vindicate the substantive rights provided." *Harris v. Lykos*, No. 12–20160, 2013 WL 1223837, *1 (5th Cir. Mar. 27, 2013) (*per curiam*), quoting *Osborne, supra* at p. 69.

The State of Louisiana has enacted procedures to permit post-conviction DNA testing. LSA C.Cr.P. art. 926.1(A)(1) permits a convicted defendant to seek DNA testing of evidence that was "secured in relation to the offense for which he was convicted." The statute thereafter sets forth the necessary allegations that must be included to entitle a convict to relief. LSA C.Cr.P. art. 926.1(B) provides:

> An application filed under the provisions of this Article shall comply with the provisions of Article 926 of this Code and shall allege all of the following:
>
> (1) A factual explanation of why there is an articulable doubt, based on competent evidence whether or not introduced at trial, as to the guilt of the petitioner in that DNA testing will resolve the doubt and establish the innocence of the petitioner.
>
> (2) The factual circumstances establishing the timeliness of the application.
>
> (3) The identification of the particular evidence for which DNA testing is sought.
>
> (4) That the applicant is factually innocent of the crime for which he was convicted, in the form of an affidavit signed by the petitioner under penalty of perjury.

The statute further directs the State Court to dismiss an application unless it finds ALL of the following:

> (1) There is an articulable doubt based on competent evidence, whether or not

> introduced at trial, as to the guilt of the petitioner and there is a reasonable likelihood that the requested DNA testing will resolve the doubt and establish the innocence of the petitioner. In making this finding the court shall evaluate and consider the evidentiary importance of the DNA sample to be tested.
>
> (2) The application has been timely filed.
>
> (3) The evidence to be tested is available and in a condition that would permit DNA testing.

Plaintiff implies that the Louisiana courts denied him DNA testing and thus violated his right to due process. Plaintiff's due process claim arises under the Fourteenth Amendment, which affords protection against the government's deprivation of liberty. The Due Process clause of the Fourteenth Amendment provides, "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amendment14, § 1.

In analyzing Due Process claims, federal courts must first determine whether the plaintiff asserting the claim has an entitlement or "liberty interest" at stake and then to determine what process, if any, is due. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Olim v. Wakinekona*, 461 U.S. 238, 250–251, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). As noted by the Supreme Court,

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But '[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.' *Herrera v. Collins*, 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). 'Given a valid conviction, the criminal defendant has

been constitutionally deprived of his liberty.' *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)(internal quotation marks and alterations omitted).

The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. '[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.' *Pennsylvania v. Finley*, 481 U.S. 551, 559, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). [Plaintiff's] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief ...

Instead, the question is whether consideration of [plaintiff's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.' *Medina v. California*, 505 U.S. 437, 446, 448, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (internal quotation marks omitted); see *Herrera, supra*, at 407–408, 113 S.Ct. 853 (applying *Medina* to postconviction relief for actual innocence); Finley, *supra*, at 556, 107 S.Ct. 1990 (postconviction relief procedures are constitutional if they 'compor [t] with fundamental fairness'). Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.

*District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68–69, 129 S.Ct. 2308, 2320, 174 L.Ed.2d 38 (2009).

As noted above, Louisiana provides a fundamentally fair post-conviction procedure. See La.C.Cr.P. arts. 924 *et seq*. More specifically, Louisiana has provided an adequate procedure for convicts to obtain forensic DNA testing to assert a claim of actual innocence. La.C.Cr.P. art 926.1. The Louisiana statutory scheme, like its Alaskan counterpart analyzed in *Osborne, supra*, is "similar to those provided for DNA evidence

by federal law and the law of other States, see, e.g., 18 U.S.C. § 3600(a), and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.' *Medina, supra*, at 446, 448, 112 S.Ct. 2572 (internal quotation marks omitted); *Osborne*, 557 U.S. at 69–70; 129 S.Ct. 2320–21. However, post-conviction DNA testing is not just another form of motion for new trial, based on new evidence which will merely call the state's case into question and perhaps warrant a re-trial; the statutory standard applied to the threshold question of DNA testing itself is whether the test results will establish the innocence of the petitioner by clear and convincing evidence. *State v. Edwards*, 43,802 (La.App. 2 Cir. 8/7/08), 988 So.2d 850, writ denied 2008–2476 (La.8/20/09), 15 So.3d 1009.

Thus, as noted above, under the clear terms of the Louisiana statute, plaintiff, in order to be deemed eligible for DNA testing must, at the outset, plead and establish that he is entitled to relief. As is relevant to this case, the Louisiana Court is authorized to dismiss the application on the pleadings unless it finds the existence of "an articulable doubt" as to plaintiff's guilt such that "DNA testing will resolve the doubt and establish [his] innocence..."

As noted above, the District Court apparently denied plaintiff's application on procedural grounds. The Second Circuit Court of Appeal however ultimately denied relief as follows:

> This applicant admitted that he threatened to scalp the victim, tied her up and then drove her and the co-defendant to the place she was raped. Under the law of principals (La. R.S.14:24) and the fact scenario of this case, regardless of what the DNA results show, this applicant's conviction would not be overturned. *See State v. Rash*, 444 So.2d 1204 (1984).

> Further, the portion of the transcript provided by the applicant shows that the victim testified that both men raped her. Even if the DNA results do not show traces of this applicant's body fluids or other evidence on the victim, lack of such evidence does not preclude a rape conviction. *See State v. Ingram*, 29,172 (La. App. 2 Cir. 1/24/97), 688 So.2d 657, *writ denied*, 97-0566 (La. 9/5/97), 700 So.2d 505.
>
> Therefore, this writ is denied.

*State of Louisiana v. Robert C. Broadway*, No. 40061-KH. [Doc. 13-1, pp. 19-20]

In other words, the Second Circuit determined that plaintiff was unable to identify or establish "an articulable doubt" as to his innocence that could be resolved by DNA testing, and the record supports that finding. On appeal, the Second Circuit recited the facts established at trial as follows:

> The rape victim, who was 14 years old at the time of these events, testified she was at home with her mother on the evening of February 18, 1982. At about dark, there was a knock on the door of their mobile home. It was Marvin Douglas, who worked for the victim's stepfather on a farm. Douglas asked the mother for a ride home. She agreed and left to take him home in her pickup.
>
> A short while later a vehicle pulled up to the trailer and there was a knock at the door. The victim, who was dressing for bed, was clad only in a T-shirt and panties. She looked out the window and saw it was her mother's pickup that pulled up. Knowing the door was locked, she went to let her mother in. When she opened the door Douglas was standing there. She tried to slam the door but Douglas pushed his way in.
>
> After Douglas pushed his way in, he pushed the victim to the floor, pulled off her panties, and started playing with her vagina. At this point, Broadway, who also worked for the victim's stepfather, entered the trailer. He was intent on burglarizing the trailer and managed to get Douglas to stop molesting the victim. <u>Broadway then gagged the victim with socks and tied her hands with speaker wire from her stereo. The defendants then proceeded to burglarize the trailer. While this was going on, Broadway</u>

> grabbed a steak knife and threatened to scalp the victim if she did not tell him where any money was. After the defendants took all they wanted, Douglas forced the victim, still wearing only a T-shirt, into the truck and she was driven to the rape site where the crime charged occurred.

*State v. Broadway*, 440 So.2d 828, 830.

In his writ application to the Second Circuit plaintiff alleged those same facts and concluded with the admission, "Broadway drove [the victim] to the crime scene where Douglas raped the victim." [Doc. 13-1, p. 7] In other words, by his own admission, plaintiff gagged the victim, tied her hands, threatened her with a knife and then drove her to the crime scene, with his co-defendant who he knew was planning on raping the victim. Regardless of whether plaintiff thereafter penetrated the victim, he clearly was a principal to the offense of aggravated rape since under Louisiana's law on principals, "All persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. R.S.14:24.

In short, plaintiff was unable to articulate any doubt as to his innocence that could be established through DNA testing. In other words, plaintiff was given all the process he was due with regard to his request for DNA testing.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted

in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A .

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, June 1, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**